**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: THE HONORABLE STEPHEN ALEXANDER VADEN, JUDGE**

|   |   |
|---|---|
| ELLWOOD CITY FORGE COMPANY, ET AL., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| UNITED STATES, | ) ) ) |
| Defendant, | )   Court No. 21-00073 |
| and | ) ) |
| METALCAM, S.P.A., | ) ) ) |
| Defendant-Intervenor. | ) ) |

**PLAINTIFFS' BRIEF SUMMARIZING ARGUMENTS**

Plaintiffs submit this Letter Brief in response to the Court's February 17, 2022 Minute Order, ECF 37. There are two overarching issues: (1) whether the exhaustion doctrine bars Plaintiffs from prevailing when Commerce admits it violated the law by not conducting on-site verification of the respondents' antidumping data, and (2) whether the *Final Determination* is supported by substantial evidence despite Commerce failing to cite any affirmative evidence to support its speculation concerning the accuracy of the Italian forgers' production costs.

As discussed during oral argument, and detailed below, application of the exhaustion doctrine to refuse consideration of Plaintiffs' challenges to Commerce's unlawful verification procedures would be an abuse of discretion because Plaintiffs exhausted their administrative remedies throughout the investigation short of filing a case brief on the topic and, in any case, the pure question of law and futility exceptions apply. As to the second overarching issue, Commerce failed to support its factual findings with substantial evidence. Neither Metalcam, S.p.A. ("Metalcam") nor Lucchini Mamé Forge S.p.A ("Lucchini") fully validated data from their prior responses. Commerce's Issues and Decision Memorandum is consequently rife with

gaps. Causing such gaps in the factual record would normally constitute a failure to respond in any ordinary supplemental questionnaire, but respondents' gaps are all the more problematic when, as here, the supplemental questionnaire was, as the United States has offered *post hoc*, supposedly serving as a "verification" audit. Consistent with Commerce's judicially affirmed practice and the statute, such failures justified application of facts available under 19 U.S.C. §§ 1677e(a)(2)(A) and (D) and, because the deficiencies were a direct result of the respondents' repeated failures to cooperate, an adverse inference under 19 U.S.C. § 1677e(b)(1)(A).

This brief is intended to supplement the discussion at oral argument.

## I. The Exhaustion Doctrine Is Discretionary; Under these Unique Circumstances, Exhaustion Should Not Bar Consideration of the Legal Issues Presented

"The basic purpose of the exhaustion doctrine is to allow an administrative agency to perform functions within its special competence—to make a factual record, to apply its expertise, and to correct its own errors so as to moot judicial controversies." *Parisi v. Davidson*, 405 U.S. 34, 37 (1972). Here, Commerce was unquestionably aware of the issues presented by its non-verification, and explicitly acknowledged its failure to comply with the law. Having recognized this legal defect, there can be no doubt Commerce had the opportunity to correct it. No factual administrative record could rewrite the statute or congressional intent embodied in the authoritative Statement of Administrative Action. Nor could Congress have possibly intended the USCIT to apply a discretionary exhaustion statute, 28 U.S.C. § 2637(d), to avoid grappling with legal faults that Commerce itself acknowledged.

### A. Commerce Was Aware of Plaintiffs' Desire for On-site Verification; Exhaustion by Raising the Argument in the Case Brief Served No Practical Purpose

Early in the investigation, Plaintiffs consistently and repeatedly stressed the need for rigorous "verification." *See* Plaintiffs' 56.2 Opening Br. at 6-7 (citing Appx082824, Appx082760). Commerce's *Preliminary Determination* recognized this need and confirmed

2

Commerce's "inten{t} to verify" respondents' data, acknowledging this "{i}s provided in section 782(i)(1) of the Act." *Preliminary Determination* at 44,502 (Appx082873). Plaintiffs' post-preliminary comments reaffirmed in no uncertain terms that without a "traditional verification…the integrity of these proceedings is in jeopardy" and stated that "a robust <u>on-site verification</u>" is what is "contemplated under the statute." Post-Preliminary Comments (Aug. 4, 2020) at 38-39 (Appx082917-082918) (emphasis supplied). Commerce clearly agreed with Plaintiffs on this point, twice acknowledging in its *Final Determination* that "<u>on-site verifications</u> {are} required under section 782(i) of the Act." Final IDM at 2 (Appx083283) (emphasis supplied); *see also* Final Determination at 79,997 (Appx083316) (on-site verification is "provided for under section 782(i) of the Act").

  Despite Plaintiffs' repeated pleas for "on-site verification," and with a full understanding of Congress' statutory "verification" requirements, Commerce unilaterally and without providing any opportunity for comment, decided it did not have to follow the law, opting for a "questionnaire in lieu of performing an on-site verification" on September 2, 2022—something, to the best of counsel's knowledge, Commerce had never done in any prior COVID-era proceeding.[1] Commerce had determined to reverse its *Preliminary Determination* pledge and *not* comply with statutory verification requirements. Commerce thus clearly rejected Plaintiffs' pleas for a statutorily compliant on-site verification. And insofar as Commerce indicated to all parties that it intended the "questionnaire in lieu of performing an on-site verification" to be akin

---

[1] For example, in the administrative proceedings underlying *Bonney Forge*, CIT Slip Op. 22-08, Commerce's final supplemental questionnaire stated that "{t}he information you submit may be subject to verification." "Sixth Supplemental Questionnaire," Case No. A-533-891, Inv., ACCESS Barcode: 3994776-01 (July 2, 2020) at 1. A month later, Commerce canceled verification, without replacement procedures, *see generally* "Cancellation of Verification and Briefing Schedule," Case No. A-533-891, Inv., ACCESS Barcode: 4009998-01 (Aug. 4, 2020), implicitly recognizing that an off-site verification is no verification at all.

to a legal verification, Plaintiffs utilized opportunities in the case brief, rebuttal brief, and hearing to remind Commerce of its verification responsibilities.

Commerce's regulations that require parties to include in their case briefs "all arguments that continue <u>in the submitter's view to be relevant</u> to the Secretary's final determination," 19 C.F.R. § 351.309(c)(2) (emphasis added), cannot dictate what is meant by "exhaustion" for purposes of 28 U.S.C. § 2637(d).  *See Chevron, U.S.A., Inc. v. NDRC, Inc.*, 467 U.S. 837, 842 (1984) (deference only for statute administered by agency); *cf. also GHS HMO, Inc. v. United States*, 536 F.3d 1293, 1300 (Fed. Cir. 2008) (a regulation that conflicts with the statute is invalid).  In any event, Plaintiffs' approach to verification is consistent with this regulation.  Plaintiffs had already requested on-site verification in the <u>post-preliminary</u> period.  Further comment on why Commerce's questionnaire was not in fact an on-site verification was thus of no practical relevance during case briefing.  Plaintiffs' brief instead presented a litany of unresolved reporting issues that persisted in the record notwithstanding Commerce's "verification."  In *Diamond Sawblades Mfrs. Coal. v. United States*, 2013 Ct. Intl. Trade LEXIS 137, Slip Op. 13-130 at 27-28 (Ct. Int'l Trade 2013), *aff'd* 809 F.3d 626 (Fed. Cir. 2015) ("*DSMC*"), the U.S. Court of International Trade found exhaustion where, in an antidumping investigation, the plaintiff challenged Commerce's failure to issue Section E of the dumping questionnaire prior to briefing and asserted various defects in the record due to the lack of a Section E questionnaire during briefing.  This is analogous to the facts here. Consequently, Plaintiffs' exhausted the issue of whether the questionnaire was lawful given the requirements for "on-site verification."  28 U.S.C. § 2637(d).

**B.   Even if Plaintiffs Did Not Exhaust Administrative Remedies, it Is Not "Appropriate" to Bar Consideration of Plaintiffs' Verification Arguments**

"{T}he requirement to exhaust administrative remedies under {28 U.S.C.} § 2637(d) is

4

not jurisdictional," but rather should only be employed "where appropriate." *Weishan Hongda Aquatic Food Co. v. United States*, 917 F.3d 1353, 1363 (Fed. Cir. 2019). Thus, even if administrative remedies were not exhausted, it is not "appropriate" to apply an exhaustion bar. Indeed, the phrase "in appropriate circumstances" was the Federal Circuit's touchstone in *Itochu*, even if there were a "{f}ailure to exploit an available agency remedy," *e.g.*, 19 C.F.R. 351.309(c)(2). *Itochu Bldg. Prods. v. United States*, 733 F.3d 1140, 1145 n.1 (Fed. Cir. 2013) (citing *Corus Staal BV v. United States*, 502 F.3d 1370, 1379 (Fed. Cir. 2007)).

During oral argument here, there was a colloquy concerning *Itochu*'s applicability to the case at bar, as *Itochu* concerned the final results of a changed circumstances review, which (unlike an original investigation) is not among the administrative proceedings listed in 19 C.F.R. § 351.309(c). Counsel for the United States stated that *Corus Staal* applied, which concerned plaintiffs' failure to timely raise a duty absorption claim. But the material facts differ considerably. Here, Plaintiffs repeatedly raised the issue administratively, excepting only their case brief. This scenario is more analogous to *Itochu* than to *Corus Staal*, where the plaintiff only partially raised an issue "not dictated by statute or regulation" one time, nine months *before* the preliminary determination. *See* 502 F.3d at 1378. And even under those circumstances, *Corus Staal* "*d{id} not imply* that the court would have abused its discretion if it had excused Corus from having to exhaust its administrative remedies." *Id.* at 1381 n.5 (emphasis supplied). Here, Plaintiffs' pre- and post-preliminary comments availed the agency with opportunities to address the issue, but Commerce rejected Plaintiffs' arguments.

The Federal Circuit has recognized that "the discretion of the judge" governs the appropriateness of exhaustion—not 19 C.F.R § 351.309(c)(2). *See Corus Staal*, 502 F.3d at 1380-81; *see also Weishan Hongda*, 917 F.3d at 1364 ("the {CIT} may waive the requirement at

5

the court's discretion."). The appropriateness of exhaustion in this investigation is all the more dubious since Commerce itself violated its statutory obligation to address arguments that its regulation required Plaintiffs to present in the case brief. *See* 19 U.S.C. § 1677f(i)(3)(A); 19 C.F.R. § 351.309(c)(2). Specifically, Commerce chose to ignore certain reporting issues raised in Plaintiffs' case brief, in part, because Commerce reasoned these were "not raised until the briefing stage." *See* Final IDM at 9 (Appx083290).

Moreover, well recognized "question of law" and "futility" exceptions to exhaustion apply here. *First*, the requirement of on-site verification and issuance of a verification report are pure questions of statutory construction. Commerce admitted as much, at least with respect to the former, acknowledging on-site verification is "required under section 782(i) of the Act." *See* IDM at 2 (Appx083283). Commerce has no discretion to deviate from this unambiguous requirement. *See Chevron,* 467 U.S. at 842-43 ("If the intent of Congress is clear, that is the end of the matter…"); *Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019) (requiring "genuine ambiguity" *after* applying "all the traditional tools of construction"). Indeed, this Court's analysis need go no further than Commerce's dual acknowledgment of <u>both</u> its statutory obligation to conduct on-site verification and its failure to comply. Final IDM at 2 (Appx083283); *see also Final Determination* at 79,997 (Appx083316).

Government counsel's *post-hoc* claims that deference is due assume ambiguity that does not exist, and flatly contradict Commerce's administrative statements. *Cf. Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 212 (1988) (declining to defer to agency counsel's statutory interpretation where the agency has articulated no position). Commerce's acknowledgement of what the statute requires distinguish this case from *Consolidated Bearings*, where determination as to the legality of Commerce's actions required analysis of its "well-established practice" in

addition to the law. *Consol. Bearings Co. v. United States*, 348 F.3d 997, 1003 (Fed. Cir. 2003). Here, Commerce it did not conduct a verification in accordance with the statute. No further fact-finding or review of past practice is necessary.

*Second*, reiteration of Plaintiffs' pleas for on-site verification in the administrative case brief or at the hearing had no chance of securing such a verification. There was evidently no need to explain that Commerce was breaking the law because, again, Commerce's Final IDM expressly acknowledged this. Final IDM at 2 (Appx083283). Moreover, from a practical standpoint, argument for on-site verification was futile insofar as Commerce had insufficient time to plan and conduct an on-site verification with mere weeks left in the investigation. *See generally* Plaintiffs' 56.2 Opening Br. at 9-10 (timeline). In other words, the looming statutory deadline for Commerce's final determination rendered Commerce "powerless" to grant plaintiffs the relief. *See Carr v. Saul*, 141 S. Ct. 1352, 1361 (2021) ("{i}t makes little sense to require litigants to present claims to adjudicators who are powerless to grant the relief requested").

## II. Commerce's Findings Were Not Supported by Substantial Evidence

### A. Metalcam's Questionnaire Responses Could Not Be Verified

As the Court understood well at oral argument, in antidumping proceedings, Commerce requires respondents to provide cost reconciliation data, which "reconcile the reported costs {in the antidumping cost database} to the company's audited financial statements." *See Hyundai Elec. & Energy Sys. Co. v. United States*, 466 F. Supp. 3d 1303, 1310 n.7 (Ct. Int'l Trade 2020), *aff'd* 15 F.4th 1078 (Fed. Cir. 2021). The cost reconciliation is so critical that Commerce has previously canceled verification altogether when a respondent fails to provide a complete and accurate cost reconciliation, resorting to facts available with an adverse inference. *See Hyundai*, 15 F.4th at 1089-90 (upholding Commerce's determination). Here, Commerce acknowledged Metalcam's cost reconciliation was neither accurate nor complete. *See* IDM at 8 (Appx083289).

7

But unlike *Hyundai*, Commerce denied that Metalcam's unremedied failure to provide a cost reconciliation was grounds for facts available *or* an adverse inference. This determination is unsupported by substantial evidence.

The Government claims this investigation is distinct and requires a different outcome because Commerce determined that Metalcam had reconciled its total, company-wide costs and it was only the constituent cost elements that remained unaligned with Metalcam's audited financial records. As discussed during oral argument, Metalcam forges an array of out-of-scope products beyond FEBs. Reconciling Metalcam's company-wide costs is not remotely sufficient. The costs that most urgently require reconciliation are FEB production costs, but Metalcam did not link these to any audited financial data. Instead, Metalcam relied on its unaudited product family standard cost methodology to break its company-wide costs into constituent cost elements (*e.g.* steel ingot, external machining, etc.), and further subdivide these by product (*e.g.*, FEBs, etc.). The following simplified examples illuminate the fundamental issue:

| Example 1 | | | | | Example 2 | | | |
|---|---|---|---|---|---|---|---|---|
| *Product* | *Input 1* | *Input 2* | *Total Cost* | | *Product* | *Input 1* | *Input 2* | *Total Cost* |
| FEBs | 5 | 3 | 8 | | FEBs | 3 | 4 | 7 |
| Product 2 | 5 | 3 | 8 | | Product 2 | 4 | 5 | 9 |
| Product 3 | 5 | 5 | 10 | | Product 3 | 4 | 6 | 10 |
| Total Cost | 15 | 11 | 26 | | Total Cost | 11 | 15 | 26 |

In each example the total cost (red box) is the cost Metalcam tied to its financial statements, but the total cost for FEBs and FEB inputs differ, demonstrating how costs can be shifted around, absent a rigorous vetting of each individual cost element (white boxes). The allocation is even more unreliable where, as here, the white box figures are calculated, in part, using negative values (*e.g.*, $6 = 7 - 1$). The result is a slew of figures that are inconsistent with either Metalcam's internal operating report or its audited trial balance. *See* Petitioners' Admin. Case Br. at Ex. 1 (Appx083198).

In addition to this failed cost reconciliation, Metalcam's responses to Commerce's "in lieu of" verification questionnaire provided ample further evidence that Metalcam's previous responses with respect to both its cost and sales data were neither accurate nor complete. Commerce dismisses these issues as irrelevant, reasoning that they were not associated with the merchandise under consideration ("MUC"). But Commerce has itself noted, this rationale is "nonsensical" where, as here, a respondent's cost allocations are themselves under dispute, *see Hyundai*, 15 F.4th at 1086, and thus cannot reasonably justify Commerce's decision to ignore Metalcam's negative costs. Metalcam also failed to reconcile its minor input chart to its audited financial records. Commerce again sidesteps the issue, claiming it was reasonable for the minor input chart not to reconcile to audited financial records because Metalcam did not intend the figures to coincide. Metalcam's cost allocation methodology allowed it to bury the cost of ingots produced, but not used, during the period of investigation within its overall cost of manufacture, and thus allocate costs away from FEBs. This resulted in steel ingot costs varying widely across FEBs with otherwise similar chemical and physical properties. This distorts the antidumping calculation, as Commerce's program is *supposed* to generate CONNUM-specific constructed values that vary according to physical properties. Commerce ignored this anomaly as well and concluded, without explanation or record support, that no distortion existed. *Finally*, in addition to the above issues with Metalcam's cost data, Metalcam could not verify its submitted sales data with screenshots from its source accounting program. Commerce acknowledged this discrepancy, but ignored it, choosing to accept Metalcam's previously undisclosed admission that it had manually manipulated its sales data by moving certain revenue items across accounts. As described in Plaintiffs' 56.2 Opening Brief, Commerce has applied adverse inferences to facts available for much less severe issues.

### B. Lucchini's Questionnaire Responses Could Not Be Verified

Commerce's judicially affirmed practice also supports the application of facts otherwise available with an adverse inference with respect to Lucchini, whose failure to timely report yield losses in the form and manner requested fundamentally impeded this investigation. Only in response to the questionnaire in lieu of verification did Lucchini acknowledge—for the first time—its failure to report yield losses separately from raw material costs, as instructed in the initial questionnaire. Commerce has consistently applied facts available with adverse inferences where a respondent has similarly withheld information. *See* Plaintiffs' 56.2 Opening Br. at 37-38. Yet here, Commerce inexplicably excused Lucchini's failure despite it having prevented Commerce from verifying (or even testing) the accuracy of Lucchini's yield loss reporting.

### III. Conclusion

Undersigned counsel appreciates the opportunity to address these issues further. The Court should decline to bar Plaintiffs under the exhaustion doctrine as the verification arguments presented herein were raised repeatedly at the administrative level. Commerce correctly acknowledged its own failure to comply with the statute and further administrative argument regarding this pure question of law would have been futile. Separately, Commerce failed to address grievous flaws in Metalcam's and Lucchini's reporting and relied on speculation and conjecture, neither of which are substantial evidence. To address these issues, remand is required.

Respectfully submitted,
/s/ Thomas M. Beline
Thomas M. Beline
**CASSIDY LEVY KENT (USA) LLP**
*Counsel to Plaintiffs*
